﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/26/19

DOCKET NO. 190206-1831
DATE: August 27, 2019

REMANDED

Entitlement to service connection for a scar is remanded.

Entitlement to connection for sinus condition, to include as due to service-connected disability, is remanded.

Entitlement to service connection for shin splints is remanded.

Entitlement to service connection for gastrointestinal disability is remanded.

Entitlement to service connection for sleep apnea, to include as secondary to service-connected disability, is remanded.

Entitlement to service connection for headaches, to include as due to service-connected disability, is remanded.

Entitlement to service connection for bilateral flat foot disability, to include as due to service-connected disability, is remanded.

Entitlement to service connection for an ear disability is remanded.

 

INTRODUCTION

The Veteran served on active duty from September 1990 to May 1992.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from an October 2018 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran selected the Higher-Level Review lane when he submitted his RAMP election form. Accordingly, the October 2018 RAMP rating decision on appeal considered the evidence of record as of the November 20, 2018, the date VA received the RAMP election form. The Veteran timely appealed the RAMP rating decision to the Board and requested direct review of the evidence considered by the RO.

REASONS FOR REMAND

All Claims

In a February 2017 notice of disagreement, the Veteran asserted that his service records were incomplete. The Veteran claimed that he received treatment at “several different clinics in Hanau, Germany,” but did not specify for what injury, disease, or disability.

Additionally, the Veteran asserts that he currently experiences a scar on his right lower leg, “directly in front of his shin bone.” He asserts that this scar was incurred during his active duty in or around 1992. Specifically, while in Grafenwoeher, Germany, the Veteran asserts that a 200-pound artillery shell was “bumped into” by a fellow service member, causing it to “knock against” his right leg. As a result of this incident, the Veteran claims that he was given a wrap by a field medic, and that he sought follow-up care in Gelnhausen, Germany. He states that he still has the “mark” on his right lower leg to this day.

In July 2017 correspondence, the Veteran stated that he also received in-service treatment in Frankfurt, Germany, at the “97th General Hospital.” 

The Veteran’s service personnel records demonstrate that he served in Germany during his active duty. The Board is unable to locate documentation concerning efforts undertaken by VA to obtain records associated with the Veteran’s alleged treatment while stationed in Germany, to include, if warranted, negative responses from the appropriate records repositories. Given that the Veteran raised this issue prior to electing Higher-Level Review on his RAMP form, a remand is warranted for further development.

Sinus, Ear, and Headaches

Service connection has already been granted for the Veteran’s left ear hearing loss; a grant that was predicated, at least in part, on the Veteran’s in-service exposure to hazardous noise associated with artillery fire. 

The evidence of record demonstrates varying diagnoses of ear, vestibular, eustachian tube, sinus, and headache disabilities, to include Meniere’s disease. The Veteran asserts that sinus, ear (beyond left ear hearing loss), and headache symptoms, either considered as manifestations of single disability or separately as distinct disabilities, is/are due to in-service exposure to hazardous noise associated with artillery fire. Particularly, the Veteran asserts that he was in close proximity to an artillery shell that unexpectedly exploded. Moreover, the Veteran asserts that he inhaled exhaust fumes from the artillery pieces after they were fired.

Given the medical complexity of this case, as well as the Veteran’s assertions, the Board finds that a remand is warranted in order to provide the Veteran with a VA examination. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (holding that, when determining the scope of a claim, the Board must consider the claimant’s description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of that claim).

Gastrointestinal

The Veteran’s claim was denied by the RO because it did not find a current diagnosis of a gastrointestinal disability. He was not provided a VA examination.

However, according to an August 30, 1991 entry in the Veteran’s service treatment records, he experienced viral gastritis. 

A November 2017 VA treatment report shows that the Veteran complained of a “burning feeling” in his stomach. VA treatment records also demonstrate that he underwent a colonoscopy in March 2019, which revealed the presence of polyps. The evidence also demonstrates that the Veteran has been prescribed medication to treat his service-connected disabilities, including anti-inflammatories for his left ankle. Consequently, the Board finds that there is an indication of an association between the Veteran’s current gastrointestinal symptoms/disability and his active duty and/or service-connected disability. As such, a remand to provide the Veteran a VA examination is required in order to satisfy VA’s duty to assist. 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Bilateral Foot

The Veteran’s August 23, 1990 enlistment examination notes bilateral pes planus, asymptomatic. 

According to a June 4, 1991 service treatment report, the Veteran “injured [his left] foot while running [during physical training].” The Veteran complained of pain in his left foot, which is distinguished from his left ankle.

In a separate service treatment report, a note indicates that the Veteran sprained his right ankle; the date appears to be in October 1991, but it is illegible.

In January 2018, the Veteran underwent a VA examination regarding the Veteran’s bilateral pes planus. During this examination, the Veteran endorsed pain “for several years, mainly after prolonged standing or walking.” Ultimately, the examiner rendered a negative etiological opinion, the entirety of which is as follows:

[T]here is no abnormal gait pattern to cause undue stress on the feet. [T]herefore it is less likely as not for the bilateral flat feet to be due to or caused by the [service-connected] left ankle.

The examiner did not provide an opinion as to whether the Veteran’s pre-existing, asymptomatic bilateral pes planus was aggravated beyond its natural progression during his active duty. Further, the examiner did not render an opinion as to whether the Veteran’s service-connected left ankle disability aggravated the Veteran’s bilateral pes planus. The examiner’s opinion was limited to causation. Consequently, the January 2018 VA examination is insufficient for purposes of adjudicating the claim herein and, thus, a remand is warranted to provide the Veteran another examination.

Sleep Apnea and Shin Splints

The Board finds that the issues of entitlement to service connection for sleep apnea and shin splints are inextricably intertwined with the other claims being remanded herein and, in the case of shin splints, with other claims pending before the RO (i.e., service connection for right and left knee disabilities). As such, these claims are remanded for contemporaneous adjudication. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

The matters are REMANDED for the following action:

1. Request from the Veteran a description, with as much detail as possible, regarding the treatment he claims to have received while stationed in Germany, including, but not limited to, the approximate dates, locations, medical facility, and unit of assignment.

2. Regardless of whether the Veteran provides a response to the request in paragraph 1, request from the appropriate record repository or repositories documentation regarding the Veteran’s claimed in-service treatment while he was stationed in Germany that is not already in the claims file. This request must include the “97th General Hospital.” If negative responses are received, such responses must also be associated with the claims file.

3. Provide the Veteran with a VA examination regarding his bilateral pes planus and gastrointestinal disability. The Veteran’s electronic claims file must be made available to the examiner and the examiner must specify in the report that it was contemporaneously reviewed. All pertinent symptomatology and findings must be reported. Any indicated special diagnostic tests that are deemed necessary for an accurate assessment must be conducted. 

The examiner is asked to first identify the presence and nature of any gastrointestinal disability, including, but not limited to, polyps.

The examiner must then provide an opinion as to whether it is at least as likely as not (a 50 percent probability or greater) that any found gastrointestinal disability was incurred in or due to his active duty OR was caused or aggravated by service-connected disability, to include any medication prescribed to treat that disability.

The examiner is also asked to provide an opinion as to whether it is at least as likely as not (a 50 percent probability or greater) that the Veteran’s pre-existing bilateral pes planus was aggravated beyond the natural course of the disability during his active duty OR a service-connected disability.

In addressing these questions, the examiner must consider and discuss the Veteran’s assertions. Moreover, with respect to a gastrointestinal disability, the examiner must address whether the Veteran experiences any residual disability from his documented in-service viral gastritis. All rendered opinions must be accompanied by a thorough rationale.

4. Provide the Veteran with a VA examination regarding his sinus, ear, and headache disability. The Veteran’s electronic claims file must be made available to the examiner and the examiner must specify in the report that it was contemporaneously reviewed. All pertinent symptomatology and findings must be reported. Any indicated special diagnostic tests that are deemed necessary for an accurate assessment must be conducted. 

The examiner is asked to first identify the presence and nature of any ear, sinus, and/headache disability, to include a determination as to whether these are separate and distinct disabilities OR manifestations of singular disability.

(Continued on the next page)

 

The examiner must then provide an opinion as to whether it is at least as likely as not (a 50 percent probability or greater) that any found disability, however diagnosed, was incurred in or due to his active duty OR was caused or aggravated by service-connected disability, to include any medication prescribed to treat that disability.

In addressing these questions, the examiner must consider and discuss the Veteran’s assertions, to include assertions as to in-service injury. Moreover, the examiner is advised that the Veteran was exposed to hazardous noise associated artillery fire during his active duty, and claims to have been in close proximity to a shell when it unexpectedly exploded. All rendered opinions must be accompanied by a thorough rationale.

 

 

T. REYNOLDS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Sean G. Pflugner, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.